

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2001 DEC -7  PM 4: 37

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

|  |  |
|---|---|
| **Alcan Rubber & Chemical, Inc.** | **CIVIL ACTION** |
| **Plaintiff** | **NO. 00-0033** |
| **VERSUS** | **SECTION: "N" (2)**<br>**Judge Clement** |
| **M/V STAR GRAN, her engines, tackle, apparel, etc.,** *in rem,* **STAR SHIPPING A.S., P.T. Andhika Lines and Gran, Inc.,** *in personam* | **MAGISTRATE:**<br>**Mag. Alma L. Chasez** |
| **Defendants** |  |

## ALCAN RUBBER & CHEMICAL, INC'S OPPOSITION TO P.T. ANDHIKA LINES' MOTION FOR SUMMARY JUDGMENT

This matter involves a claim for damage to a consignment of rubber products owned by Alcan Rubber & Chemical Company, Inc. ("Alcan") carried under "through" bills of lading from Palembang, Indonesia to New Orleans, Louisiana. At discharge in New Orleans, the rubber products were found with one or more of the following change conditions: bleached, imbedded with wood splinters, missing skids, compressed, adrift, delivered short units, and/or fire or smoke damaged. P.T. Andhika Lines ("Andhika") has filed a Motion for Summary Judgment arguing that it is not responsible for plaintiff's damages because the loss occurred while the cargo was aboard a vessel

subcontracted by Andhika, as opposed to while onboard Andhika's vessel.  Andhika also argues

that the claim against it should be stayed pending arbitration.  Alcan opposes Andhika's Motion for

Summary Judgment on the basis that:

(1)     The bills of lading issued by P.T. Andhika are "through" bills of lading, for which Andhika

        maintains liability throughout the entire voyage from Indonesia to New Orleans;

(2)     There is a genuine issue of material fact whether portion of the damage occurred onboard

        Andhika's vessel, the M/V RANGITANE, prior to the cargo's loading aboard the M/V

        STAR GRAN;

(3)     Andhika has waived the application of any forum-selection clause in the "through" bills of

        lading;

(4)     The forum selection clause in the "through" bill of lading is invalid, as it does not

        contractually designate a specific forum, and does not consider that there may be multiple

        carriers with differing principal places of business; and

(5)     There is a genuine issue of material fact as to whether Singapore or other tribunal would

        violate the minimum protections offered by the Carriage of Goods by Sea Act ("COGSA"),

        in violation of the act.

        In October 1999, Alcan entered into a Conline Booking Note with Andhika Chartering Pte

Ltd. for the transport of 1200 units of rubber ("rubber cargo") from Palembang, Indonesia to New

Orleans, Louisiana.[1]  (Exhibit "A").  Importantly, the booking note provided that Andhika would

---

[1]   The booking note for the carriage of Alcan's rubber cargo states that the Terms and
Conditions of the Carriage are Liner Terms.  Liner terms include the cost for loading, stowing,
trimming and discharge as part of the overall freight rate.  *See  Generally,*
<<www.hhgfaa.org/public/industryterms3.asp >> ( defining industry terms)

transport Alcan's rubber **from Indonesia to New Orleans** for the specified freight rate, paid to

Andhika, of $98 per unit. The rubber cargo was loaded onboard the M/V RANGITANE in

Palembang, Indonesia in good order and condition, as evidenced by the clean P.T. Andhika Lines

Bills of Lading Nos. PLM/NOL-01 through PLM/NOL-08, inclusive. (Exhibit "B"). These bills of

lading list the load port, carrying vessels and port of discharge as follows:

Quote

| Pre-carriage by* | Place of receipt by pre-carrier* |
|---|---|
| MV. RANGITANE   V.001.002.99 | PALEMBANG, INDONESIA |
| Vessel | Place of Loading |
| MV. STAR GRAN V. 1099 | CIGADING |
| Port of Discharge | Place of Delivery by on-carrier* |
| NEW ORLEANS | NEW ORLEANS |

*    *    *

* Applicable only when document used as a Through Bill of Lading

Endquote

In order to carry out the transit from Palembang to New Orleans, Andhika arranged for the

M/V RANGITANE to carry the cargo from Palembang to Cigading. Andhika then subcontracted

with Star Shipping A.S. ("Star") for the carriage of Alcan's rubber cargo from Cigading to New

Orleans as shown by Star Shipping's bill of lading issued to P.T. Andhika, as shipper and consignee.

3

(Exhibit "C"). The P.T. Andhika Lines' bills of lading, however, set forth the through carriage arrangement.

The M/V RANGITANE departed from Palembang and transported the rubber cargo to Cigading, where the cargo was loaded onboard the M/V STAR GRAN. At loading in Cigading, Star issued a bill of lading to P.T. Andhika Lines, identifying P.T. Andhika as the shipper of all of the rubber cargo carried under P.T. Andhika Lines bills of lading PLM/NOL - 01 through 08 (inclusive). In addition, the Star bill of lading consigns delivery of the cargo at New Orleans "To the Order of P.T. Andhika Lines (Jakarta)". In fact, the Star bill of lading does not list, name or reference Alcan as a receiver or consignee. *See Id.* The Star bill of lading specifically states: "cargo to be released on production of P.T. Andhika Lines B/L NO PLM/NOL - 01, 02, 03, 05, 06, 07 and 08." *Id.* The bill of lading also remarks:

> This Bill of Lading represents seven (7) mates receipts that were issued clean and one (1) mates receipt that was issued with the attached six (6) pages of remarks. *Id.*

The six (6) pages of remarks referenced and attached to the Star bill of lading except to the condition of the rubber cargo at the time of loading onboard the STAR GRAN in Cigading. These exceptions state that the rubber was loaded onboard the STAR GRAN at Cigading, wet, dirty and with torn and damaged wrappers. There are also numerous other exceptions as to the packaging and condition of the goods. ( Exhibit "D"). These exceptions to the conditions of the goods at the time of loading in Cigading show that the cargo was <u>not</u> in the same good order and condition as when the voyage began onboard the M/V RANGITANE in Palembang. The clean onboard bills of lading issued at the time of loading the M/V RANGITANE, compared to  the exceptions noted at the time

4

of loading onboard the STAR GRAN in Cigading, is indicative of damage occurring during the M/V RANGITANE's voyage.

At the time that the STAR GRAN discharged goods in New Orleans, Louisiana, marine surveyors with Matthews, Matson & Kelley viewed Alcan's rubber cargo.  While it is undisputed that there was a fire onboard the STAR GRAN during the voyage from Cigading to New Orleans, the survey report prepared by Matthews, Matson & Kelley notes that some of the rubber units were found to be bleached (which is caused by wetting of the cargo), with wood splinters, missing skids, compressed adrift and short delivered.  (Exhibit "E").  Some of these stated damages are consistent with the exceptions listed by Star at the time of loading the rubber cargo in Cigading.

A suit for damage was initiated in New Orleans by Alcan on January 5, 2001.  Named as defendants in this suit are the M/V STAR GRAN, as well as the carriers of the cargo - Star Shipping, Grieg Shipping,  Andhika Lines and Gran, Inc.   The Court held a preliminary Scheduling Conference on May 18, 2001 in order to establish litigation cut off dates.  During the Scheduling Conference, the Court specifically inquired as to whether jurisdiction and venue were established.  Counsel for Andhika contested jurisdiction and venue.  The Court directed that all Motions either to the question of jurisdiction or venue be filed so as to be heard no later than July 11, 2001.  (Exhibit "F").  Andhika did not file any motion contesting jurisdiction or venue prior to this date, nor did it file any motion with the Court requesting an extension of this deadline.

## LAW AND ARGUMENT

**A.      Andhika's Motion Does Not Meet the Standard Required for Summary Judgment**

Summary Judgment may be granted only if, after the evidence is reviewed in a light most favorable to the non-movant, the Court determines that no genuine issue of material fact exists.  See

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322 - 323 (1986); Fed. R. Civ. P. 56(c). In assessing

materials used in support of a Motion for Summary Judgment, the court must view the record "in

the light most favorable to the party opposing the motion" by resolving "all ambiguities and

draw[ing] all factual inferences in favor of the party against whom Summary Judgment is sought."

*Chambers v. TRM Copy Centers Corp.,* 43 F. 3rd 29, 36 (2nd Cir. 1994). "If, as the issue on which

Summary Judgment is sought, there is any evidence in the record from any source from which a

reasonable inference would be drawn in favor of the non-moving party, Summary Judgment is

improper." *Id* at 37

Based upon the record submitted by Andhika (copies of bills of lading) Summary Judgment

cannot be granted, as the bills of lading (on their face) show that there are genuine issues of material

fact which preclude the grant of this Motion for Summary Judgment.

**B.     The Facts Show that the P.T. Andhika Bills of Lading are "Through" Bills of Lading
        Rather than Transshipment Bills of Lading**

A "through" bill of lading is one that governs the entire transit from the port of loading to the

ultimate port of discharge and fixes the liability of each of the participating carriers so that several

carriers are treated not as independent contracting parties, by as multiple carriers participating in one

overall contract of transportation. *Missouri, K. & T R. Co. v. Ware,* 244 U.S. 383, 387 - 88 (1917).

Where a "through" bill of lading is the contract of carriage, even though an oncarrier may issue a

second bill of lading, it is void for lack of consideration, because the oncarrier is already obligated

to transport the cargo under the terms and conditions of the through bill. *Mexican Light and Power

Co v. Texas M.R. Co.,* 331 U.S. 731, 734 (1947). In its Motion for Summary Judgment, Andhika

acknowledges that if its bill of lading is a "through" bill of lading, then Andhika's liability would

6

extend from the time of its acceptance of the goods at loading in Palembang, all the way up to the time of delivery in New Orleans. See, *Defendant's Motion for Summary Judgment against Alcan Rubber & Chemical, Inc.*, p. 4. In order to avoid the liability exposure, Andhika attempts to characterize its bills of lading in a way that is not supported by the facts.

A "through" bill of lading is one in which the final destination for the goods is noted on the face of the bill, although the goods may travel by virtue of connecting or oncarriers to reach their ultimate destination. *Coutinho, Kairo & Co. v. Hyde Park Shipping, Inc.,* 1992 WL 165725 , *3 (E.D.La. 1992) (Schwartz, J.). The question of whether a bill of lading is considered a "through" bill is a question of fact that is determined by examining factors, including: (1) whether the final destination of the goods is indicated on the bill of lading; (2) the conduct of the shipper and the carriers; and (3) whether connecting or oncarriers were compensated by payment made from the initial carrier or by separate compensation from the shipper. *Coutinho, Cairo & Co.,* 1992 WL at * 3; *Tokio Marine and Fire Insurance Co. Ltd. v. Hyundai Merchant Marine Co. Ltd.,* 717 F. Supp. 1307, 1309 (N.D. Ill. 1989).

In this matter, the asterisked sections of the P.T. Andhika Lines' bills of lading, which are to be filled out only when the bill is to be used as a "through" bill of lading, are completely filled out. (Exhibit "B"). In *Coutinho,* the court considered a bill of lading identical to the P.T. Andhika Lines bills. The court stated: "The parties inserted Chicago, Illinois in the asterisked section of the bill of lading entitled 'place of delivery by oncarrier', which is indicative of the parties intent that SVGA 12001, 12002, and 12003 were used as "through" bills of lading." *Coutinho, Cairo & Co.,* 1992 WL at *2. The specification of the carrying vessel, the place of receipt by the pre-carrier, as well as the place of delivery by the oncarrier in the P.T. Andhika Lines bills of lading - all sections that are to

be used only when the bill of lading is to be used as a through bill - evidences an intent that the bills of lading issued by Andhika in this case are **"through"** bills.

The cases cited by Andhika to support its argument that its bills are transhipment bills, confirms that Andhika should have identified only the loading port (Palembang) and the transshipment port (Cigading) in its bills of lading if it wished to relieve itself for the responsibility for damages that occurred during on-shipment. See, *CIA International De Seguros, S.A. v. Barber Lines A/S*, 1989 AMC 824 (S.D. Fla. 1988) (providing that the defendant was relieved of responsibilities for damages that occurred during on-shipment only because spaces providing for combined transport were empty. Defendant, however, could have been liable for any loss occurring between its acceptance of the shipment and final delivery if the bill of lading was fully out and adjudged to be a "through bill"). See also, *Volvo Transport Corp v. M/V CONCERT EXPRESS*, 1991 AMC 535 (D.N.J. 1990) (Relying upon rationale and citing *Barber Lines A/S* with approval). Another case cited by Andhika in support of its Motion for Summary Judgment, *Abdul Jabber Hassan v. S.S. Eurofreighter*, 1980 AMC 893 (S. D. N. Y. 1979), only questions whether a transhipment during the voyage constituted an unreasonable deviation and does not concern the type of the bill of lading. In the instant case, contrary to the cases cited by Andhika, all of the sections that are to be used in "through" carriage situation were filled out, evidencing the parties' intent that such bills of lading were to be used as "through" bills.

The conduct of P.T. Andhika Lines and Star Shipping, as evidenced by the bill of lading issued by Star, further shows that the P.T. Andhika Lines bills of lading are "through" bills. The P.T. Andhika Lines bills of lading specify the "oncarriage" port as New Orleans. This "box" on the Andhika bill of lading is to be filled in only when the bill is intended to be a "through" bill of lading,

8

as expressly stated on the face of each Andhika bill. See Exhibit "B". Further, the P.T. Andhika Lines bills of lading identify Alcan as the "Notify" Party who is to be contacted upon the goods' arrival in New Orleans, whereas the Star bill names Andhika as the shipper, consignee, and notify party, and explicitly provides that the cargo is to be released upon the production of the P.T. Andhika Lines bills of lading. These facts show that the carriers themselves intended for the P.T. Andhika Lines bills of ladings to serve as "through" bills of lading for the shipment.

Although Andhika contends that the bills of lading are <u>not</u> "through" bills of lading, it does not address any of the factual circumstances involved in determining whether a bill of lading is a through bill. Rather, Andhika simply states that the bills of lading are "clearly" not through bills of lading. However, the determination as to whether the P.T. Andhika Lines bills of lading are transhipment or through bills of lading is a question of fact, which cannot be decided adversely to Alcan in light of the evidence and legal standard required for summary judgment. This issue of fact is germain to this litigation, as Andhika is potentially liable for any loss occurring between acceptance of the goods and final delivery in New Orleans if the bills of lading are found to be through bills of lading.

## C.    There is Evidence Showing that Damage Occurred to Alcan's Rubber Cargo During M/V RANGITANE's Voyage

While Andhika characterizes its bills of lading as transhipment bills of lading, it does not contest that it is responsible for damage to the cargo occurring during the voyage onboard the M/V RANGITANE. It attempts to convince the Court that summary judgment is appropriate, by stating that Alcan's damages occurred subsequent to the M/V RANGITANE'S voyage. However, when the Andhika bills of lading (showing that the goods were loaded clean onboard the M/V RANGITANE)

9

are compared to the Star bill (containing six pages of exceptions to the good order and condition of the goods) and in light of the findings of Matthews, Matson & Kelley at discharge in New Orleans, there is evidence showing some damage during the M/V RANGITANE voyage.

Under the Carriage of Goods by Sea Act, the holder of the bill of lading can establish a *prima face* case against a carrier by proving delivery of materials in good condition (e.g. by producing a "clean" bill of lading, and redelivery in a damage condition). *Socony Mobile Oil Co. v. Texas Coastal and International*, 559 F. 2nd 1008 (5th Cir 1977). When consideration is given to this legal standard, the bills of lading, exceptions and findings at discharge in New Orleans, there is credible evidence showing damage occurring onboard the M/V RANGITANE voyage. These facts preclude a grant of Andhika's Motion for Summary Judgment.

**D.    Andhika has Waived Any Rights Pursuant to Forum Selection Clause**

Despite this Court's establishment of July 11, 2001 as the deadline for filing Motions directed at questions of jurisdiction or venue, Andhika contends that this matter should be stayed pending arbitration in Singapore.[2]  The Court specifically contemplated a deadline for jurisdiction and venue motions during the preliminary conference.  This matter was discussed not only in a conference with the Court, but the specific deadline was included in the Court's Order setting forth trial and other cutoff dates. See Exhibit "F". Andhika Lines now attempts to avoid this deadline by raising this jurisdictional issue in its motion for summary judgment.

---

[2] As discussed in full below, P.T. Andhika Lines' bills of lading do not specify arbitration in Singapore . Rather, the bills of lading contain a general forum selection clause providing that "any dispute under the bill of lading shall be decided in the country where the carrier has his principal place of business, and the law of such country shall apply except as provided elsewhere herein. See Exhibit "B" Andhika apparently is attempting to rely upon a reference to "arbitration in Singapore, English law to apply", appearing in the conline booking note. The conline booking note, however, specifically provides that the terms of the bill of lading supercede any of the terms or conditions of the booking note. See Exhibit "A".

10

In *Re Delaeas Shipping*, 1996 AMC 434 (W.D. Wash 1995) The Court stated, " A forum selection clause will be deemed waived if the party had taken actions inconsistent with it or delayed it enforcement, and other parties would be prejudiced." See also, *In Re Retionois Enterprises, Inc.,* 1999 AMC 889 (S. D. M. Y. 1999). Andhika Lines has ignored the Court's deadline for filing any form of motion pertaining to jurisdiction or venue - an action that is inconsistent with an intent to have the dispute resolved in a foreign jurisdiction. Further, Alcan could suffer severe prejudice if this Court enforces the forum selection clause at this late date. First, Andhika granted an extension of time for commencing proceedings in a foreign jurisdiction [3] was granted by Andhika to Alcan up to and including October 3, 2001. However, further extensions of time were not obtained and no action was taken in a foreign jurisdiction after the passing of the Court's July 11, 2001 cut off date, as Andhika did not file any motion regarding jurisdiction or venue prior to the Court's cut off date. Alcan could face a time bar argument in a case now filed in a foreign jurisdiction if this action against Andhika is now dismissed.

Additionally, the clause relied upon by Andhika is a forum selection clause, which unlike an arbitration clause, forces the Court to dismiss rather than stay the action. Where an action is stayed pending arbitration, the Court is left with a jurisdictional mechanism to ensure that the arbitration panel faithfully applies COGSA, as required by law.[4] *Nippon Fire & Marine Insurance Co. v. M/V*

---

[3] While the M/V STAR GRAN, Star Shipping and Gran, Inc. also granted an extension of time to file in a foreign jurisdiction, these defendants are proceeding in the New Orleans action without raising any question as to the jurisdiction of venue. If Alcan were forced to proceed in another forum against Andhika, it would be litigating its case in two separate countries. This would prejudice Andhika and does not serve to promote judicial economy.

[4] For a full discussion as to the genuine issue of material fact as to whether a Singapore tribunal would apply COGSA as required by law, see Section F of this Opposition.

*SPRING WAVE*, 92 F. Supp. 2d 574 (E.D.La. 2000); *In re Ratonis Enterprises, Inc.*, 1999 AMC 889

(S.D.N.Y. 1999). The dismissal of this action, however, leaves this Court with no way of ensuring

a Singapore tribunal would properly apply COGSA.

**E.    The Andhika Forum Selection Clause does not contractually Designate the Forum in Singapore and does not consider that there may be Multiple Carriers with Differing Principal Places of Business**

The Andhika bills of lading jurisdiction clause is non-specific as to the location where any

dispute arising under the bills of lading should be resolved. Rather, the jurisdiction clause simply

states that "any dispute . . . shall be decided in the country where the carrier has his principal place

of business, and the law in such country shall apply except as provided elsewhere herein." In this

matter, there are multiple carriers of the cargo - the Star interests and Andhika. The Eastern District,

as well as other courts, have recognized that there can be more than one carrier for a single voyage.

*American Home Assurance Co. v. M/V SLETTER, et al.*, 1993 WL 543055 (E.D.La. 1993). See also,

*Pacific Employers Insurance Co. v. M/V IVER CHAMPION*, 1996 WL 37782, *12 (E.D.La. 1996).

The Andhika Lines bills of lading, however, do not recognize this premise and provides only for

resolution of disputes in the country where the "carrier" (singular) has his principal place of

business.[5]  Andhika claims that its principal place of business is in Singapore.[6]  Star, however,

_____

[5] Clause 17 (also known as an identity of carrier or demise clause) of the P.T. Andhika Lines bills of lading (set forth in full as Exhibit " B") provide that the bill of lading is between the merchant and owner of the vessel. The clause does not contemplate that there can be more than one carrier. U.S. Courts have found that clause 17 in the Andhika Lines' bills of lading lessens the carriers' liability below COGSA's minimum protections and are accordingly void under U.S. law. *Thyssen Steel v. M/V KAVO YERKAS*, 50 F. 3rd 1349, 1353 (5th Cir. 1995). See also, William Tetley, *The Demise of the Demise Clause*, 44 McGill L. J. 807, 814 - 816 (1999).

[6] The P.T. Andhika Bills of Lading, however, show Jakarta-Indonesia as the location for P.T. Andhika. See Exhibit "B".

maintains its principal place of business in Norway and P.T. Andhika presumably maintains its principal place of business in Indonesia. See footnote No. 6. Thus, Alcan is left in an impossible position with two carriers with principal place of business in entirely separate hemispheres. The non-specific forum selection clause in this matter does not provide plaintiff with a certain forum in which to file its claim and is unreasonable considering that there are multiple carriers.

**F.    There is a Genuine Issue of Material Fact as to Whether a Singapore Tribunal Would Apply COGSA's Minimum Guarantees**

In determining the validity and enforceability of a forum selection clause under COGSA, *Vimar Seguros v. Reaseguros, S.A. v. M/V SKY REEFER* 515 U.S. 528, 540 (1995), states that the pertinent question to be asked is "whether the substantive law applied will reduce the carrier's obligation to the cargo owner below what COGSA guarantees." While Andhika claims that Singapore arbitration is the proper forum, which is denied, there is evidence that the identity of carrier clause, which is invalid under COGSA (see footnote 4) would be upheld in Singapore on authority of *the Berkshire* [1974] L.l. L.r. 18185. *See*, William Tetley, Marine Cargo Claims (3rd Edition), at 1085-1087. (Exhibit " G"). The upholding of the identity of carrier clause would adversely impact Alcan's substantive rights against Andhika - as Andhika would presumably not be found to be a carrier, despite its issuance of through bills of lading. Further, as discussed previously, the jurisdiction clause in the P.T. Andhika bills of lading is a forum selection clause, which would divest the Court of continuing jurisdiction over this matter. Unlike a stay pending arbitration, [7] the Court would be left without a mechanism to ensure that COGSA's minimum protections are applied

---

[7] In *Sky Reefer*, the Court considered a foreign arbitration clause rather than a foreign jurisdiction clause, such as the one at issue in this matter. The Court in *Sky Reefer* noted that its retention of jurisdiction over a matter in arbitration would ensure that COGSA was faithfully applied by the foreign arbitrators. See, *Sky Reefer*, 515 U.S. at 542.

by a Singapore or other forum. *M/V SPRING WAVE*, 92 F. Supp. 2d at 577; *In re Rations Enterprises*, 1999 AMC at 891. Accordingly, Andhika's Motion requesting enforcement of the forum selection clause cannot be enforced due to the genuine issue of material fact regarding a Singapore or other forum's faithful application of COGSA.

## CONCLUSION

Andhika's Motion for Summary Judgment should be denied, as the express terms on the face of the Andhika bills of lading show that the bills are "through" bills of lading, which impose responsibility on Andhika for the safe handling of the cargo during all stages of the shipment. It is uncontested there was damage to the cargo during the voyage. Accordingly, Andhika's motion on the "transshipment through bill of lading" issue, should be denied. Alternatively, there are genuine issues of material fact whether the Andhika bills of lading are through bills, imposing liability on Andhika for the entire voyage from Indonesia to New Orleans and there are genuine issues of material fact as to whether damage occurred onboard the M/V RANGITANE's voyage from Palembang to Cigiding.

Andhika has waived any application of the forum selection clause as it has delayed attempts to enforce any forum selection clause in its bills of lading, beyond the time period established by the Court, and the grant of Andhika's motion to enforce the forum selection clause, at this late date, would prejudice to Alcan because of the expiration of the time bar extension previously granted by Andhika. In addition, the forum selection clause appearing in the Andhika bills of lading are uncertain as to where suit should be filed because there are multiple carriers with multiple places of business. Jurisdiction and venue are established with respect to the M/V STAR GRAN, Star Shipping and Gran, Inc. and therefore, judicial economy will be furthered by this Court maintaining

14

jurisdiction over Andhika so that all claims be resolved in on forum. Finally, there is a genuine issue of material fact as to whether the Singapore or other forum would faithfully apply the minimum protections offered by the Carriage of Goods by Sea Act. For these reasons, Alcan respectfully urges that Andhika's motion for summary judgment should be denied.

Respectfully submitted,

JOHN F. FAY, JR. (La. Bar #1870), T.A.
FRANCIS J. BARRY, JR. (#2830)
WILLIAM K. TERRILL, II (#25897)
              of
**DEUTSCH, KERRIGAN & STILES, L.L.P.**
755 Magazine Street
New Orleans, Louisiana 70130
Tel: (504) 581-5141
Fax: (504) 529-7389
**Attorneys for Alcan Rubber & Chemical, Inc.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been forwarded to all counsel of record by depositing a copy thereof, postage prepaid, in the United States mail, addressed to them on this _____ day of December, 2001.

_____

William K. Terrill, II

G:\VICTORIA\Jff\STARGRAN\PLEADING\opp to mtn judgmt.wpd

16

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **Alcan Rubber & Chemical, Inc.** | **CIVIL ACTION** |
| **Plaintiff** | **NO. 00-0033** |
| **VERSUS** | **SECTION: "N" (2)**<br>**Judge Clement** |
| **M/V STAR GRAN, her engines, tackle, apparel, etc., *in rem*, STAR SHIPPING A.S., P.T. Andhika Lines and Gran, Inc., *in personam*** | **MAGISTRATE:**<br>**Mag. Alma L. Chasez** |
| **Defendants** | |

## STATEMENT OF MATERIAL FACTS AS TO WHICH <u>THERE EXISTS A GENUINE ISSUE TO BE TRIED</u>

Plaintiff, Alcan Rubber & Chemical, Inc., ("Alcan") through undersigned counsel, responds

to Andhika's statement of uncontested material facts, and in accordance with Local Rule 56.2,

submits the following statement of material facts as to which there exists a genuine issue to be tried:

## I.

There is no dispute that a portion of Alcan's rubber was damaged by fire, but there is a genuine issue of material fact as to other damage to the cargo during its precarriage aboard M/V RANGITANE, and the cause and type of damage to the rubber cargo carried from Indonesia to New Orleans. (Exhibits "C", and "E")

## II.

There is no dispute that a portion of Alcan's rubber was damaged by fire, but there is a genuine issue of material fact as to other damage to the cargo during its precarriage aboard M/V RANGITANE, and the cause and type of damage to the rubber cargo carried from Indonesia to New Orleans. (Exhibits "C", and "E")

## III.

Andhika's statement III is denied. P.T. Andhika issued "through" bills of lading indicating that the cargo was in its custody for the entire voyage. (Exhibit "B").

## IV.

It is undisputed that the P.T. Andhika Lines bills of lading reflect "Pre-Carriage by *M/V RANGITANE." The asterisk in this portion of the bill of lading indicates a block in the bill of lading form that is to be completed only in the event the bill of lading is used as a Through Bill of Lading. The fact that the block is "filled in", establishes that the P.T. Andhika Lines bills are "through" bills of lading.

## V.

The P.T. Andhika bills of lading were issued by P.T. Andhika Lines on its own form with its company logo in the upper right hand corner. The name of the agency that signed the bills in Palenbang on behalf of Andhika Lines is partially obscured by the agents signature, but the agent appears to be P.T. Lima Bahari Pang unusa, Palenbang "LPN". (Exhibit "B").

## VI.

The P.T. Andhika bills of lading do not specify Singapore as the place for resolving disputes under the bills of lading. (Exhibit "B"). There is a genuine issue of material fact as to whether the forum selection clause and choice of law clauses in the P.T. Andhika Lines' bills of lading are valid under the Carriage of Goods by Sea Act.

## VII.

There is a genuine issue of material fact as to whether a Singapore tribunal would apply the minimum protections offered by the Carriage of Goods by Sea Act.

Respectfully submitted,

JOHN F. FAY, JR. (La. Bar #1870), T.A.
FRANCIS J. BARRY, JR. (#2830)
WILLIAM K. TERRILL, II (#25897)
of
**DEUTSCH, KERRIGAN & STILES, L.L.P.**
755 Magazine Street
New Orleans, Louisiana 70130
Tel: (504) 581-5141
Fax: (504) 529-7389
**Attorneys for Alcan Rubber & Chemical, Inc.**

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the above and foregoing pleading has been forwarded

to all counsel of record by depositing a copy thereof, postage prepaid, in the United States mail,

addressed to them on this ___7^{TH}___ day of December, 2001.

_William K. Terrill, II_

William K. Terrill, II

G:\VICTORIA\Jff\STARGRAN\Pleading\material facts.wpd

**SEE RECORD FOR
EXHIBITS
OR
ATTACHMENTS
NOT SCANNED**