

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LA

2002 DEC -5  PM 1:57

LORETTA G. WHYTE
CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **Alcan Rubber & Chemical, Inc.** **and Royal & Sunalliance Insurance** **Australia Limited** **Plaintiff** | **CIVIL ACTION** **NO.** 00-0033 **and 00-3467** **consolidated NO. 00-0033** |
| **VERSUS** | **SECTION: "S" (2)** **Judge Lemmon** |
| **M/V STAR GRAN, her engines, tackle,** **apparel, etc.,** *in rem,* **STAR SHIPPING** **A.S., Gran, Inc.,** *in personam* **Defendants** | **MAGISTRATE:** **Mag. Wilkinson** |

## 1. PRE-TRIAL CONFERENCE

The Pre-Trial Conference in this action was held at 10 a.m. on December 6, 2002.

## 2. APPEARANCE OF COUNSEL

John F. Fay, Jr., T.A. (#1870)
William K. Terrill (#25897)
DEUTSCH, KERRIGAN & STILES, LLP
755 Magazine Street
New Orleans, LA 70130
Telephone: (504) 581-5141
Telephone: (504) 566-1201
**Attorneys for Alcan Rubber &**



DATE OF ENTRY

DEC 0 9 2002



**Chemical, Inc. and Royal & Sunalliance**
**Insurance Australia Limited**

Robert J. Barbier, T.A. (# 2741)
Stephen E. Mattesky (# 9046)
TERRIBERRY, CARROLL & YANCEY, L.L.P.
3100 Energy Centre
1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 523-6451
**Attorneys for M/V STAR GRAN, Star Shipping**
**A/S, Gran, Inc. and Greig Shipping A/S**

## 3.  DESCRIPTION OF THE PARTIES

Alcan Rubber & Chemical, Inc. ("Alcan") was the owner of a shipment of rubber products that was carried aboard the M/V RANGITANE and the M/V STAR GRAN from Palembang, Indonesia, to Cigading, and finally to New Orleans, Louisiana.

Royal & Sunalliance Australia Limited ("Royal") is the subrogated underwriters of a shipment of plasterboard shipped by Boral Plasterboard onboard the M/V STAR GRAN from Cigading, Indonesia to Pensacola, Florida.

At all material times, Gran, Inc. was the owner of the M/V STAR GRAN, Grieg Shipping A/S was the disponent owner of the M/V STAR GRAN, and Star Shipping A/S was the charterer of the M/V STAR GRAN.

## 4.  JURISDICTION

Jurisdiction is founded on the Court's admiralty and maritime jurisdiction, pursuant to 28 U.S.C §1333(1).  Jurisdiction is uncontested.

2

## 5. <u>PENDING MOTIONS</u>

Defendants had filed a Motion in Limine to Exclude the Testimony of Plaintiffs Fire Expert, George Casellas. This motion was mistakenly set for hearing before Magistrate Wilkinson. A motion to transfer the hearing on the motion to Judge Lemmon is pending before the court. Plaintiffs have opposed Defendants Motion in Limine.

Defendant P.T. Andhika Lines, who was a defendant in Alcan's suit, was dismissed on a Motion for Summary Judgment. The dismissal of Andhika is on appeal to the Fifth Circuit Court of Appeals pursuant to Rule 54(b). Both Alcan and Andhika have filed briefs in the Fifth Circuit. Alcan's reply is due on December 9, 2002.

As to defendants, there is currently pending a motion in limine to exclude the testimony of plaintiffs' fire expert, George Casellas. All parties reserve the right to file any additional motions that may become necessary prior to or at the time of trial.

## 6. <u>SUMMARY OF MATERIAL FACTS</u>

(a)    **Alcan Rubber & Chemical, Inc. and Royal & Sunalliance Insurance Australia Limited**

This action involves an admiralty and maritime cargo damage claim. Alcan was the owner of a cargo of rubber and Royal was the insurer of a plasterboard cargo, each cargo suffered damage during the voyage of the M/V STAR GRAN

Alcan's claim is for physical, wetting and contamination by foreign matter (i.e., plasterboard dust) damage to a consignment of rubber shipped aboard the M/V STAR GRAN. The rubber cargo was loaded onboard the M/V RANGITANE in Palembang, Indonesia in good order and condition

3

pursuant to eight (8) P.T. Andhika form ocean bills of lading dated November 9, 1999. The rubber cargo was thereafter loaded onboard the M/V STAR GRAN's numbers 1, 2, 6, 8 & 10 holds in Cigading for carriage to the United States, and a bill of lading was issued for such carriage.

Royal's claim is for physical and wetting damage to a consignment of plasterboard that was shipped onboard the M/V STAR GRAN from Cigading, Indonesia to Pensacola, Florida under a single ocean bill of lading dated November 11, 1999. The bill of lading covers 9,086,700 gross tons of plasterboard. The plasterboard was loaded into the M/V STAR GRAN's numbers 1, 2, 6, 8 & 10 holds and was held in place, in part, by inflated plastic bladders.

The M/V STAR GRAN sailed Cigading on or about November 16, 1999. The owners/operators of the STAR GRAN placed a three (3) man maintenance gang on the vessel for the voyage. This maintenance gang was not a part of the ships crew; rather, they were aboard the vessel strictly for the purpose of working on replacing components of the vessel's $CO_2$ system. The $CO_2$ system had discharge pipes that lead into each of the vessel's holds.

Six days after the M/V STAR GRAN began her voyage from Indonesia, the crew discovered fire in the No. 8 cargo hold. Testimony from the crew suggests that the fire was extinguished quickly, after which the ship called at a port of refuge at Reunion. During the ship's stay at Reunion her owner and operator discharged two dumpsters, approximately 10 to 15 units, of fire-damaged rubber from hold 8. Despite ample opportunity and after taking notice that the rubber securing bladders were deflated, the owner and operator of the STAR GRAN did not resecure the either the rubber or plasterboard cargo stowed in hold 8. No dunnage was used to secure the plasterboard cargo.

4

Following the ship's departure from Reunion, she made a second stop at Cape Town to replenish her $CO_2$. The ship owner and operator did not re-secure the cargo at Cape Town. When the ship arrived at New Orleans, surveyors found that the cargo in cargo hold 8 had shifted significantly, causing substantial damage to the plasterboard and contamination of the rubber. Plasterboard cargo in the M/V STAR GRAN's number 1, 2, 6 & 10 holds suffered from both physical and some wetting damage, in part from seawater entry into the vessel holds.

Although some pieces of plasterboard sustained fire damage, the majority of the boards suffered physical damage from being banged against the ship's structure due to inadequate dunnaging or securing of the cargo. Losses for the plasterboard were mitigated by selling the 58,213 damaged pieces of plasterboard at salvage. After these mitigation efforts, a loss of $498,455.92, exclusive of interest and costs was sustained due to the damage to the plasterboard.

All of the rubber cargo that was stowed above the plasterboard in hold 8 became contaminated with the white dust from the damaged plasterboard. In addition, some units of rubber were damaged by fire and heat and some by water damage and wood splinters. Alcan sorted and reconditioned the damaged rubber at a loss of $181,670.20, exclusive of interest and costs.

The shipowner and operator claim they have no liability because of the fire statute and COGSA's fire defense. These defenses, however, should be rejected at trial because the vessel was unseaworthy at the commencement of the voyage and the owner had privity and knowledge of cutting and welding that was being conducted on deck, which is more likely than not, the cause of the five onboard the STAR GRAN The ship owner had dispatched a maintenance gang on the vessel to replace various $CO_2$ piping on the ship during the voyage. Although the maintenance gang and

5

ship's crew aver that they did not repair the $CO_2$ piping on the forward combing of hold 8, which was located at the area of the fire, one of the independent marine surveyors who inspected the vessel after the casualty found fresh primer on the $CO_2$ piping adjacent to the fire location. As such, the physical evidence viewed during the discharge shows to the contrary. Claimants also suggest that the majority of the damage was not caused by the fire, but by the ship owner's and operator's failure to re-secure the cargo at Reunion before re-commencing the voyage.

      (b)    **M/V STAR GRAN, Star Shipping A/S, Gran Inc. and Grieg Shipping A/S.**

This matter involves claims for cargo damage (fire, smoke, wetting and physical) to consignments of palletized rubber and bundles of plasterboard (wallboard), the result of a fire aboard the STAR GRAN during a voyage from Indonesia to the United States in late 1999.

The subject cargos were loaded aboard the STAR GRAN in Indonesia in early November 1999. Thereafter, STAR GRAN sailed for the United States. On November 22, 1999, while in the middle of the Indian Ocean and far from land, STAR GRAN suffered a fire in her no. 8 hold. The fire was initially reported at 1345 on November 22, 1999, when crew members on the main deck detected smoke coming from the no. 8 hold forward port side. The officer on watch on the bridge was immediately alerted and the fire alarm sounded.

STAR GRAN's crew mustered at their appointed stations and commenced fighting the fire in accordance with the master's orders. Initial fire fighting efforts consisted of boundary cooling with ship's hoses. This was followed by the release of carbon dioxide into the No.8 cargo space. Within an hour of the release of the $CO_2$ the fire was out.

6

STAR GRAN proceeded to a port of refuge at Reunion Island arriving approximately four days after the fire. At Reunion the No. 8 hatch covers were opened and the cargo examined for damage and any residual fire. The fire had burned the most intense in the area of the center line forward of the No. 8 hold upper deck.

Some of the fire damaged rubber was removed from the hold and placed in containers on the main deck of the vessel. Additional bundles of rubber were placed in the void spaces to replace fire damages rubber air bags that were initially installed as dunnage for the cargo of plasterboard. Thereafter STAR GRAN proceeded to her discharge ports in the Gulf of Mexico.

Upon arrival in the United States surveyors for both cargo and vessel interests attended on board . Fire expert Dr. John Atherton of Burgoyne Inc. attended aboard the vessel on behalf of vessel interests. After careful investigation Dr. Atherton was unable to determine the cause of the fire.

Cargo interests retained the services of fire expert H. Deese of Fire Engineering Consultants, Inc, who attended aboard the STAR GRAN on January 8, 2000 at Pensacola, Florida. Mr. Deere never rendered a report.

For the purpose of trial, cargo interests retained the services of fire expert George Casellas of Marine Consulting Services, Inc. who did not attend onboard the STAR GRAN but opined that the cause of the fire most likely was ignition of rubber bales and/or their wrappings by hot slag from welding activities on $CO_2$ discharge piping being conducted by vessel's maintenance crew.

Casellas bases his assumption on the review of various photographs taken by cargo surveyors during their attendance on board STAR GRAN and allegedly on crew testimony regarding the fact

7

that some hot work was being performed on the $CO_2$ piping. It should be noted that the assumption

is not supported by the testimony of the crew nor the ship's documents regarding hot work. In fact

the cargo surveyors who attended aboard the STAR GRAN upon her arrival at the first discharge

ports specifically searched for any evidence of hot work in the area of the fire but found none.

Star Gran did have a special maintenance crew onboard this voyage. Their duties only

involved chipping, sanding and painting. Any hot work performed during the voyage was carried

out by the ship's fitters in accordance with approved safety procedures. All hot work performed in

the area of the fire was done after the casualty.

*     *     *     *     *

The measure of carrier's liability in the event of a fire is grounded in the Fire Statute, 46 USC

§ 182, which requires cargo to carry the burden of proof in showing the fire occurred as a result of

owner's design or neglect in causing the fire or in impeding its extinguishment. The fire defense

is also included in the exceptions under the Carriage of Goods by Sea Act.

The Fifth Circuit Court of Appeals has interpreted the burden placed on cargo in

*Westinghouse Electric Corp. v M/V LESLIE LYKES*, 734 F. 2d 199 (5th Cir. 1984) *cert. denied,* 469

U.S. 1077 (1984).

> The burden is on the cargo to identify by a preponderance of the
> evidence the cause of the fire, and also to establish that the cause was
> due to the "actual fault or privity" of the carrier.... Moreover, cargo's
> burden is not satisfied by proving that the fire was caused by the
> negligence of the master or crew. "Negligence of such owner" means
> personal neglect of the owner, or, in the case of corporate owner,
> negligence of its managing officers or agents.
> *Id.* at 206-207.

8

The Fifth Circuit further explained the rationale:

> We adhere to our prior holdings that, if the carrier shows that the damage was caused by fire, the shipper must prove that the carrier's negligence caused the fire or prevented its extinguishment. *Id.* at 207.

STAR GRAN was properly manned pursuant to Norwegian law and her officers and crew were properly trained in fire detection and suppression. Her classification documents were in order and her emergency drills, fire drills and safety procedures had been followed properly. The fire was successfully suppressed by the crew.

The defenses afforded vessel interests under the Fire Statute and COGSA are strong. Cargo has the heavy burden of proof which it cannot meet in this case. Cargo has not met its burden and as a consequence may not recover for the damages suffered to its cargo.

*   *   *   *   *

The formal claim for plasterboard interests allege damages of $467,491.84 for the loss of 54,720 sheets of plasterboard packed in bundles, stowed in no. 8 hold which sustained physical damage and smoke odor damage. Surveyor for vessel interests estimates the plasterboard damages to cargo in the no. 8 hold at $375,174 all the result of the fire and subsequent events related thereto.

An additional claim is asserted by cargo interests for $30,764.08 for physical damage in wetting the plasterboard carried in STAR GRAN's holds 1, 2, 6, and 10. The bills of lading covering the carriage to those consignments were claused for physical damage and wetting conditions noted prior to loading of the cargo aboard STAR GRAN and therefore should be attributed to pre-loading conditions. It was also noted that some rough handling by discharging stevedores and complaints

9

regarding the sufficiency of the packaging of the plasterboard during the discharge in the United States.

With regard to the claim for damages to the rubber cargo, plaintiffs claim loss of $161,708.51. Surveyor for vessel interests places the loss at $120,989 noting that cargo's claim includes pallets of rubber discharged from other holds which were not affected by the fire or fire suppression efforts and for which pre-loading damages were noted on the mate's receipts and bills of lading.

The consignments of rubber were initially carried pursuant to a liner booking note dated October 26, 1999 by Andhika Lines to arrange for the carriage of plaintiff's consignment of rubber aboard the M/V RANGITANE to the Port of Cigading, Indonesia connecting with the M/V STAR GRAN for on carriage to its final discharge port at New Orleans, Louisiana. In accordance with the booking note, Andhika Lines issued bills of lading covering the carriage of the subject consignment of rubber.

Cargo interests have sued Andhika Lines; however, Andhika prevailed on a summary judgment motion at the district court level regarding the forum selection clause in its bills of lading. This matter is currently on appeal.

## 7.    **UNCONTESTED ISSUES OF FACT**

a.    Alcan was the owner of the subject rubber cargo.

b.    Royal is the subrogated underwriter of Boral Plasterboard, and has paid an insurance claim for damage to the subject plasterboard cargo.

c.    The M/V STAR GRAN is an ocean going vessel engaged in the carriage of goods by sea between various ports, including the ports of Cigading, Indonesia and the United States.

d.    At the time of the voyage at issue, the M/V STAR GRAN was owned by Gran, Inc.;Grieg Shipping A/S was the disponent owner of the M/V STAR GRAN; and Star Shipping A/S was the charterer of the M/V STAR GRAN.

e.    In November 1999, the plasterboard cargo identified in bill of lading STAU99SIN008A was delivered to the M/V STAR GRAN at Cigading, Indonesia and for carriage to the port to Pensacola, Florida.

f.    In November 1999, the rubber cargo identified in bill of lading STAU99SIN009A was delivered to the M/V STAR GRAN at Cigading, Indonesia for carriage to Port of New Orleans, Louisiana.

g.    The M/V STAR GRAN departed the Port of Cigading bound for the United States on November 16, 1999.

h.    Alcan and Royal maintain an *in rem* claim against the M/V STAR GRAN, as well as *in personam* claim against defendants Star Shipping A.S., Grieg Shipping A.S. and Gran, Inc.

## 8.    CONTESTED ISSUES OF FACT

a.    Whether the M/V STAR GRAN and the defendant vessel owner and/or operator damaged plaintiffs cargo through their negligence or breach of contract by failing to deliver the cargo to plaintiffs in the same order and condition as when received by each to the defendants.

b.    Whether plaintiffs cargo was improperly stowed in the M/V STAR GRAN holds, resulting in damage to the cargo.

11

c.    The seaworthiness of the M/V STAR GRAN at the commencement and during the voyage.

d.    Whether ongoing repair work onboard the M/V STAR GRAN constitutes an unseaworthy condition that caused the fire that occurred onboard the vessel.

e.    Whether plaintiffs cargo was damaged during the transit from Reunion Island to the United States, due to the failure to re-secure the cargo.

f.    Whether defendants were negligent breach of contracts or legal duties in failing to re-secure plaintiffs cargo subsequent to the fire.

g.    The amount of loss suffered by plaintiff.

h.    Whether and to what extent plaintiffs goods were damaged.

i.    The cause of any damage to plaintiffs goods.

j.    The cause and origin of the fire onboard the M/V STAR GRAN.

k.    The nature and extent of damage to the plaintiffs goods.

l.    Whether and to what extent plaintiffs are entitled to recover damages.

m.    The extent of damage, if any, to plaintiffs caused by fire onboard the vessel as opposed to other causes.

n.    Whether plaintiffs mitigated their losses.

o.    Whether any portion of plaintiffs loss was caused by the design or neglect of the owner of the STAR GRAN.

p.    The cause, nature and extent of damage and/or loss, if any.

q.    The responsibility and liability, if any, of the various defendants.

r.    Whether plaintiffs have met their burden of proof under the Fire Statute and COGSA.

s.      Whether the officers and crew of the M/V STAR GRAN were properly licensed and had received safety training including fire fighting.

t.      Whether M/V STAR GRAN was properly classed with her classification society DNV.

u.      Whether on November 22, 1999 in the middle of the Indian Ocean, M/V STAR GRAN suffered a fire in her number 8 hold.

v.      Whether the fire was initially reported at 1345 on November 22, 1999.

w.      Whether the officer on watch on the bridge was immediately alerted and the fire alarm sounded.

x.      Whether the fire fighting efforts consisted of boundary cooling with ship's hoses followed by release of carbon dioxide into the number 8 cargo hold.

y.      Whether the fire was reported out within an our of the release of the CO2.

z.      Whether the M/V STAR GRAN was properly manned pursuant to Norwegian law and the fire was successfully suppressed by the crew.

p.      The amount of loss sustained by plaintiff.

q.      Any issue of fact inherent in the parties statements of the case or the issues of law.

## 9.    CONTESTED ISSUES OF LAW

a.      Whether the delivery of cargo to the vessel and subsequent delivery of cargo to plaintiffs and damaged condition establishes a *prima face* of liability against the M/V STAR GRAN and her owner, and/or operator.

b.      Whether the damage found at destination is presumed to have occurred while the cargos were in the custody of defendant vessel interest.

c.  Whether defendants are liable for damages to cargo that were caused while such cargos were in their care, custody and control.

d.  Whether plaintiffs acted reasonably in mitigating their damages.

e.  Whether plaintiffs claim is to any package or other limitation.

f.  Whether the defendants breached their obligations under the Carriage of Goods by Sea Act, Harter Act and/or general maritime law.

g.  Whether the Fire Statute has any application to this case.

h.  Plaintiffs applicable burden of proof.

i.  Whether plaintiffs can carry their burden of proof.

j.  What presumptions, if any, plaintiffs are entitled to under the Carriage of Goods by Sea Act, the Harter Act, general maritime law, and/or other statute or convention.

k.  Whether the M/V STAR GRAN was seaworthy at the commencement of the voyage and whether due diligence was used to ensure its seaworthiness.

l.  The cause of damage to the cargo.

m.  Whether the M/V STAR GRAN and her owners/operators are liable to plaintiffs for their damages.

n.  Whether or not defendants were negligent, and if so, whether or not the negligence caused any damage to the cargos.

o.  Whether defendants can make out any defenses raised and meet any burdens of proof assigned to them.

p.  Whether plaintiff is entitled to prejudgment interest, and the rate for the same.

14

q.     Whether plaintiffs can meet their burden of proof against defendants as to the Fire Statute and COGSA.

r.     Whether the alleged damages were the result of the actual fault or privity of the carriers.

s.     Whether as a matter of law defendants are responsible for any of the alleged damage to the cargo.

t.     The burdens of proof of the parties.

u.     Whether plaintiffs have mitigated their damages as required by law.

v.     Whether plaintiffs' damages, if any, are limited by the COGSA package limitation.

w.     Whether there was pre-shipment damage to the cargoes.

x.     Whether Andhika Lines bills of lading were "through bills of lading".

y.     Whether plaintiffs have a contractual relationship with defendants.

z.     What are the actual contracts of carrier for the subject cargoes?

aa.    Those issues implicit in the foregoing contested issues of fact.

bb.    Any issue of law relating to or suggested by the foregoing contested issues of fact.

## 10.   <u>LIST OF EXHIBITS TO BE INTRODUCED AT TRIAL.</u>

**(a.)   Alcan Rubber & Chemical, Inc. and Royal & Sunalliance Insurance Australia Limited**

1.     Bills of Lading;

2.     Marine Notes of Protest with Attachments;

3.     Weekly Officers Staff Meeting Agendas;

4.     Action Plan;

5.     Certificate of Inspection;

15

6.      ISM Code Certification;

7.      Cargo Plan for voyage 1099;

8.      Captain Dela Cruz' Certificates;

9.      D-15 Green Binder, Familiarization Records/Deck Checklists/Work Permits;

10.     Ginge-Kerr Manual;

11.     Trim & Stability Book;

12.     Packet of Plans;

13.     Cargo Securing Manual;

14.     Instructions Manual for Firefighting;

15.     Cargo Fire Alarm System;

16.     Deck Logbook;

17.     Shipboard Work Instructions Manual;

18.     D-3 Maintenance Reports;

19.     Binder M-24, Safety and Emergency Training Records;

20.     Engine Room Logbook;

21.     D-14 Maintenance Record of Safety Equipment;

22.     Emergency Battery Inspection Logbook, Fire Alarm Test, $CO_2$ Alarm Test;

23.     Certificate in Firefighting and Safety, Neil Busarang;

24.     Seaman's Papers, Ronick Santome;

25.     Certificate of Completion of Advance Training in Firefighting, Geroncio Lopez;

26.     Seaman's Licenses and Certificate for Justito Balicanta;

27.    Job Order Given by Master;

28.    Certificates and Licenses;

29.    Checklist;

30.    Hot Work Permit, 11/19/99;

31.    Hot Work Permit, 11/19/99;

32.    Hot Work Permit, 11/10/99;

33.    Hot Work Permit, 11/5/99;

34.    Hot Work Permit, 10/25/99;

35.    Hot Work Permit, 10/21/99;

36.    Section of General Arrangement Plan;

37.    Side View, Wing Tank No. 5;

38.    Photographs taken by Marine Surveyors and others;

39.    Expert report of George Casellas;

40.    Survey reports of Matthews, Matson & Kelley with all attachments;

41.    Survey report of Doug Peal with all attachments;

42     Contract(s) of carriage and Mates Receipts;

43.    Debit notes;

44.    Invoices for purchase;

45.    Claim statements;

46.    Freight invoices

47.    Notice of claim;

48. Customs manifests;

49. Weighing reports

50. OS&D Reports;

51. Salvage letters;

52. Salvage bid requests;

53. Salvage bid return letters and evidence of payment;

54. Evidence of salvage payment;

55. Loss summary;

56. Invoices documenting expenses incurred;

57. Commercial invoices;

58. Invoices for all surveyors;

59. Depositions of STAR GRAN Master, Mates and crewmembers, including drawn sketches during depositions and all attachments thereto;

60. Letters of Undertaking;

61. Insurance claim payment documentation/subrogation receipts;

62. Samples of damaged cargo and/or laboratory analysis of the same;

63. Reports of all surveyors retained by any party;

64. Correspondence regarding claims for damage;

65. All documents pertaining to the fire detector or extinguishing system on the vessel;

66. All documents referring to the fighting of the fire;

67. Any document referring to the condition of the Motor Vessel STAR GRAN at the material times;

18

68.    Survey Report of Frans Coppers with attachments;

69.    Report of John Atherton with attachments;

70.    Any document referring to the condition of the cargo at the material times;

71.    All documents reviewed or considered by any expert;

72.    All documents referring to plaintiffs damages;

73.    Depositions of any and all witnesses and exhibits thereto;

74.    Any document produced during discovery; and

75.    Any document identified or offered by any other party.

**(b)    M/V STAR GRAN, Star Shipping A/S, Gran, Inc. and Grieg Shipping A/S.**

Licenses and certificates of the officers and crew of the M/V STAR GRAN

1.    STAR GRAN muster list

2.    STAR GRAN safety training plan

3.    STAR GRAN emergency response plan

4.    STAR GRAN safety meeting minutes

5.    STAR GRAN log entries regarding safety drills

6.    STAR GRAN deck log

7.    STAR GRAN engine log book

8.    Loading and stowage documents

9.    STAR GRAN crew list

10.    $CO_2$ system instruction manual

11.    $CO_2$ extinguishing system certificates

12.    STAR GRAN classification certificates

13.    STAR GRAN fire detection system plan

14.    STAR GRAN fire fighting safety plan

15.    STAR GRAN ventilation plan

16.    STAR GRAN stowage plan

17.    STAR GRAN general arrangement plan

18.    Cargo manifest

19.    STAR GRAN hot work permits

20.    STAR GRAN arrival and departure particulars for the subject voyage

21.    Photographs of the vessel and cargo

22.    Records showing cargo disposition

23.    Applicable bills of lading

24.    Applicable charter parties

25.    Loading stevedores' records

26.    Discharging stevedores' records

27.    Marine note of protest

28.    Log extracts for the subject voyage

29.    Incident report of fire in hold no. 8

30.    Contingency manual first notification check list to the company

31.    Telex dated 22 November 1999 entitled "Incident and Damage Report"

32.    All exhibits to depositions of the officers and crew of the STAR GRAN

33.   Incident and damage report dated 22 November 1999

34.   Statement dated 26 November 1999 to Port Authority Reunion

35.   Correspondence from Burgoyne to the captain of the M/V STAR GRAN

36.   Unitor S.A. certificate of inspection dated 15 June 1998 for the M/V STAR GRAN

37.   Det Norske Veritas ISM Code Certification for the M/V STAR GRAN dated 1 July

      1999

38.   Copy of the M/V STAR GRAN shipboard work instructions manual

39.   Mates' receipts for the subject cargos

40.   U.S. Customs Service cargo declaration forms for the subject cargos

41.   STAR GRAN smoke detector manual

42.   Safety equipment record for STAR GRAN firefighting equipment

43.   Safety construction and safety equipment certificates for the STAR GRAN

44.   DMV safety manual certificate for STAR GRAN

45.   Vessel particulars

46.   Statement of fact

47.   Incident report

48.   Fire alarm and $CO_2$ alarm test log book

49.   Shipboard work instruction manual

50.   Survey reports of Frans Coppers of Coppers & Co. with attachments

51.   Report of Dr. John Atherton of Burgoyne, Inc. with attachments

52.   Survey reports of Matthews, Matson & Kelley, Inc. with attachments

53.    Survey reports of M. H. Barrie & Associates with attachments

54.    Salvage sale documents for the cargoes of plasterboard and rubber

55.    Packing lists for the cargoes of rubber and plasterboard

56.    Commercial invoices for the cargoes of rubber and plasterboard

57.    OS&D reports

58.    Depositions of any and all witnesses and exhibits thereto

59.    Any exhibit listed or used by any other party.

## 11. <u>DEPOSITION TESTIMONY</u>

The parties may offer testimony of any witness whose attendance at trial can not be compelled. The parties reserve the right to take depositions for perpetuation purposes of any witness whose attendance cannot be assured at trial.

Plainitffs plan to offer the deposition testimony of the master and crew members from the STAR GRAN, referenced in Section 13.

Defendants reserve the right to use the deposition testimony of any witness that resides beyond the subpoena power of this Honorable Court or who may be unavailable to appear at trial in this matter. Specifically, defendants may use the deposition testimony of Captain Arnel P. Dela Cruz, Ronick R. Santome, Neil Lazaro E. Busarang, Geroncio B. Lopez, Eduardo Mesias, Justito Paz Balicanta, and Dante B. Turingan.

## 12. DEMONSTRATIVE EVIDENCE

All parties reserve the right to use a chalk board, charts, graphs, sketches, video tapes, blow-ups of deposition testimony or other exhibits at any time during the course of the proceedings, including during opening statements and closing arguments.

## 13. WITNESSES

**(a.)**    **Alcan Rubber & Chemical, Inc. and Royal & Sun Alliance Insurance Australia Ltd. Witnesses.**

**Will call Witnesses:**

1.    Doug Peal and/or other representative of M.H Barrie
      M.H. Barrie & Associates
      P.O. Box 973
      Daphne, Alabama 36526

      Fact and Expert witness who will testify regarding the damaged condition of the plasterboard cargo at the time of discharge from the STAR GRAN; his attendance and involvement with a joint survey; the condition of the STAR GRAN at the time of discharge; the physical and wetting damage to the plasterboard cargos; the cause of the damage to the cargo; the salvage sale of the plasterboard cargo; the quantification of Royal's damages, his report, findings and other matters.

2.    Henry N. Feste
      Matthews, Matson & Kelly. Ltd.
      2626 N. Arnoult Rd., Suite 400
      Metairie, Louisiana 70002

      Fact and Expert witness who will testify regarding the condition of the rubber and plasterboard cargos discharge; the nature of damage to the cargo; the cause of the damage to the cargo; the condition of the M/V STAR GRAN at the time of discharge; mitigation efforts for th rubber cargo, including sorting of the rubber and salvage sale of the cargo; the quantification of Alcan's damage, his report and other matters within his knowledge.

3.    George Casellas
      Marine Consulting Services, Inc.
      5125 Belle Dr.
      Metairie, Louisiana 70006

Expert witness who will testify regarding the cause and origin of the fire onboard the M/V STAR GRAN and other matters contained within his expert report.

**May Call Witnesses:**

4.    Neil Turner and/or other representative of Star Shipping, Grieg Shipping and/or Gran, Inc.
Star Shipping
1100-B Dauphine St.
Mobile, Alabama

Fact witness who may testify regarding the loading and carriage of the plasterboard and rubber cargos onboard the M/V STAR GRAN; the use and purpose of the fitting gang onboard the STAR GRAN for the carriage; the condition of the STAR GRAN prior to the carriage; the activities of the fitting crew during the carriage; the fire onboard the STAR GRAN; firefighting efforts on the STAR GRAN; the STAR GRAN's calling at Reunion Island and Cape Town; the failure to re-secure plaintiffs cargos in Reunion and Cape Town; the extent to damage to plaintiffs cargo; and other matters.

5.    Frans C. Coppers
1424 General Pershing Ave.
New Orleans, Louisiana 70115

Fact and Expert witness who may testify regarding the discharge of rubber and plasterboard cargos; the condition of the STAR GRAN at the time of discharge; the nature of the damage to the rubber and plasterboard cargos and the quantification of the same.

6.    Al Weeks and/or other representative of SSA Stevedores
Stevedoring Services of America (SSA Stevedores)
Napoleon Ave. Wharf
New Orleans, Louisiana

Fact witness who may testify regarding the condition of cargo discharged from the M/V STAR GRAN in New Orleans; condition of the STAR GRAN at the time of discharge; condition of the cargo at the time of discharge; stacking and segregation of cargo discharged, and other matters within his knowledge.

7.    Captain Arnel P. Dela Cruz (by deposition) and/or other officers from the M/V STAR GRAN
M/V STAR GRAN
Kingsville Subd., Cyrus 13,
Corner Sumulong Highway
Antipolo, Rizal, Philippines

Fact witness who may testify regarding the loading and carriage of the plasterboard and rubber cargos onboard the M/V STAR GRAN; the use and purpose of the fitting gang onboard the STAR GRAN for the carriage; the condition of the STAR GRAN prior to the carriage; the activities of the fitting crew during the carriage; the fire onboard the STAR GRAN; firefighting efforts on the STAR GRAN; the STAR GRAN's calling at Reunion Island and Cape Town; the failure to re-secure plaintiffs cargos in Reunion and Cape Town; the extent to damage of plaintiffs cargo; and other matters within his deposition.

8.      M.H Barrie
        M.H. Barrie & Associates
        P.O. Box 973
        Daphne, Alabama 36526

Fact witness who may testify regarding the salvage sale of the plasterboard cargo and mitigation of damages for the loss of the plasterboard cargo.

9.      Wayne Spuddon and/or other representative of Boral Plasterboard
        Boral Plasterboard
        45 Northeast Loop 410, Suite 700
        San Antonio, Texas 78216

Fact witness who may testify regarding the damaged condition of the plasterboard cargo at the time of discharge from the M/V STAR GRAN; the rejection of the plasterboard cargo by Boral's customer; Boral's mitigation of damages and the submission of Boral's claim to underwriters.

10.     Burhanuain Gunawan and/or representative of P.T. Petrojaya Boral Plasterboard
        P.T. Petrojaya Boral Plasterboard
        Gedung Graha Mobiesel 5th Flr.
        Jl. Mampang Prapatan Raya No. 139
        Jakarta, INDONESIA

Fact witness who may testify regarding the production and sale of Boral's plasterboard; arrangements for shipment of the plasterboard; manufacture of the plasterboard; packaging of the plasterboard and its transport to the port for loading onboard the STAR GRAN.

11.     Duncan Edwards and/or other representative of International Cargo Loss
        International Cargo Loss
        7620 Royal Street, Suite 201B
        Park City, Utah 84060

25

Fact witness who may testify regarding the claim for damage to Boral's plasterboard cargo; damages sustained by Boral; Boral's mitigation of its damages; and payment of the claim by underwriters.

12. Edwardo Mesias (by deposition)
M/V STAR GRAN
553 Farola B. SMC
Miguelito Homes
Gen. T. De Leon
Val. City, Philippines

Fact witness who may testify regarding the loading and carriage of the plasterboard and rubber cargos onboard the M/V STAR GRAN; the use and purpose of the fitting gang onboard the STAR GRAN for the carriage; the condition of the STAR GRAN prior to the carriage; the activities of the fitting crew during the carriage; the fire onboard the STAR GRAN; firefighting efforts on the STAR GRAN; the STAR GRAN's calling at Reunion Island and Cape Town; the failure to re-secure plaintiffs cargos in Reunion and Cape Town; the extent of damage to plaintiffs cargo; and other matters within their deposition.

13. Dante Turingan (by deposition)
M/V STAR GRAN
Pedro CT, Carmencita Village B. Turingan, SN
Pinas City, Philippines

Fact witness who may testify regarding the loading and carriage of the plasterboard and rubber cargos onboard the M/V STAR GRAN; the use and purpose of the fitting gang onboard the STAR GRAN for the carriage; the condition of the STAR GRAN prior to the carriage; the activities of the fitting crew during the carriage; the fire onboard the STAR GRAN; firefighting efforts on the STAR GRAN; the STAR GRAN's calling at Reunion Island and Cape Town; the failure to re-secure plaintiffs cargos in Reunion and Cape Town; the extent of damage to plaintiffs cargo; and other matters within his deposition.

14. Geroncio Lopez (by deposition)
M/V STAR GRAN
4716 Kawait St.
Makati City 1200, Phillipines

Fact witness who may testify regarding the loading and carriage of the plasterboard and rubber cargos onboard the M/V STAR GRAN; the use and purpose of the fitting gang onboard the STAR GRAN for the carriage; the condition of the STAR GRAN prior to the carriage; the activities of the fitting crew during the carriage; the fire onboard the STAR GRAN; firefighting efforts on the STAR GRAN; the STAR GRAN's calling at Reunion

Island and Cape Town; the failure to re-secure plaintiffs cargos in Reunion and Cape Town; the extent of damage to plaintiffs cargo; and other matters within his deposition.

15. Neil Busarang (by deposition)
M/V STAR GRAN
6026 Santander, CEBN,
Philippines

Fact witness who may testify regarding the loading and carriage of the plasterboard and rubber cargos onboard the M/V STAR GRAN; the use and purpose of the fitting gang onboard the STAR GRAN for the carriage; the condition of the STAR GRAN prior to the carriage; the activities of the fitting crew during the carriage; the fire onboard the STAR GRAN; firefighting efforts on the STAR GRAN; the STAR GRAN's calling at Reunion Island and Cape Town; the failure to re-secure plaintiffs cargos in Reunion and Cape Town; the extent of damage to plaintiffs cargo; and other matters within his deposition.

16. Justito Paz Balicanta (by deposition)
M/V STAR GRAN
37 Calayab, Laoag City
Phillipines

Fact witness who may testify regarding the loading and carriage of the plasterboard and rubber cargos onboard the M/V STAR GRAN; the use and purpose of the fitting gang onboard the STAR GRAN for the carriage; the condition of the STAR GRAN prior to the carriage; the activities of the fitting crew during the carriage; the fire onboard the STAR GRAN; firefighting efforts on the STAR GRAN; the STAR GRAN's calling at Reunion Island and Cape Town; the failure to re-secure plaintiffs cargos in Reunion and Cape Town; the extent of damage to plaintiffs cargo; and other matters within his deposition.

17. Edwardo A. Mesias (by deposition)
M/V STAR GRAN
Farola B. SMC Miguelito Homes, Gen T.
De Leon, Val. City, Philippines

Fact witness who may testify regarding the loading and carriage of the plasterboard and rubber cargos onboard the M/V STAR GRAN; the use and purpose of the fitting gang onboard the STAR GRAN for the carriage; the condition of the STAR GRAN prior to the carriage; the activities of the fitting crew during the carriage; the fire onboard the STAR GRAN; firefighting efforts on the STAR GRAN; the STAR GRAN's calling at Reunion Island and Cape Town; the failure to re-secure plaintiffs cargos in Reunion and Cape Town; the extent of damage to plaintiffs cargo; and other matters within his deposition.

18.    Ronick Santome (by deposition)
       M/V STAR GRAN
       Purok Sampaguita, New Isabela, Tacurong
       Sultan Kudrat, Philippines

       Fact witness who may testify regarding the loading and carriage of the plasterboard and
       rubber cargos onboard the M/V STAR GRAN; the use and purpose of the fitting gang
       onboard the STAR GRAN for the carriage; the condition of the STAR GRAN prior to the
       carriage; the activities of the fitting crew during the carriage; the fire onboard the STAR
       GRAN; firefighting efforts on the STAR GRAN; the STAR GRAN's calling at Reunion
       Island and Cape Town; the failure to re-secure plaintiffs cargos in Reunion and Cape Town;
       the extent of damage to plaintiffs cargo; and other matters within his deposition.

19.    Geroncio Lopez (by deposition)
       M/V STAR GRAN
       4716 Kawit St.
       Makati City 1200, Philippines

       Fact witness who may testify regarding the loading and carriage of the plasterboard and
       rubber cargos onboard the M/V STAR GRAN; the use and purpose of the fitting gang
       onboard the STAR GRAN for the carriage; the condition of the STAR GRAN prior to the
       carriage; the activities of the fitting crew during the carriage; the fire onboard the STAR
       GRAN; firefighting efforts on the STAR GRAN; the STAR GRAN's calling at Reunion
       Island and Cape Town; the failure to re-secure plaintiffs cargos in Reunion and Cape Town;
       the extent of damage to plaintiffs cargo; and other matters within his deposition.

20.    Peter Perkowski and/or representative of Alcan Chemical & Rubber, Inc.
       Alcan Rubber & Chemical, Inc.
       29 Broadway
       New York, New York  10006

       Fact witness who may testify regarding the purchase and shipment of Alcan's rubber cargo
       onboard the M/V STAR GRAN; the damage to Alcan's rubber cargo; the loss sustained by
       Alcan and its mitigation of damages.

21.    Jimmy Colon and/or representative of Alcan Chemical & Rubber, Inc.
       Alcan Rubber & Chemical, Inc.
       29 Broadway
       New York, New York  10006

Fact witness who may testify regarding the purchase and shipment of Alcan's rubber cargo; the damage to Alcan's rubber cargo; the loss sustained by Alcan and its mitigation of damages.

22.    Nur Nungkat and/or representative of Alcan Chemical & Rubber, Inc.
        Alcan Rubber & Chemical Company
        Bunas Centre, Suite 10.03-A,
        JL Senen Raya 135
        Jakarta, INDONESIA

        Fact witness who may testify regarding the production of Alcan's rubber cargo; the shipment of the rubber cargo; the packaging of the rubber cargo for transit; and other matters within his knowledge.

23.    John Atherton
        Burgoyne Incorporated
        2864 Johnson Ferry Road, Suite 100
        Marietta, GA 30062-5635

        Fact and Expert witness who may testify regarding his inspection of the M/V STAR GRAN; his review of STAR GRAN documentation; and his conclusions contained in his report regarding the cause and origin of the fire onboard the M/V STAR GRAN.

24.    John Swanson
        Matthews, Matson & Kelly. Ltd.
        2626 N. Arnoult Rd., Suite 400
        Metairie, Louisiana 70002

        Fact and Expert witness who may testify regarding the condition of the rubber and plasterboard cargos discharge; the nature of damage to the cargo; the cause of the damage to the cargo; the condition of the M/V STAR GRAN at the time of discharge; mitigation efforts for th rubber cargo, including sorting of the rubber and salvage sale of the cargo; the quantification of Alcan's damage and other matters within his knowledge.

25.    Nicholas Punch
        Fauries Weighing, Inc.
        1156 Terry Parkway
        New Orleans, Louisiana 70056

Fact witness to testify regarding the condition of Alcan's rubber cargo at the time of discharge from the STAR GRAN; the quantity of rubber cargo discharged from the STAR GRAN; the condition of the cargo discharged from the STAR GRAN; mitigation efforts for th rubber cargo, including sorting of the rubber and salvage sale of the cargo; the quantification of Alcan's damage and other matters within his knowledge.

26.    Lionel Fauries
       Fauries Weighing, Inc.
       1156 Terry Parkway
       New Orleans, Louisiana 70056

Fact witness to testify regarding the condition of Alcan's rubber cargo at the time of discharge from the STAR GRAN; the quantity of rubber cargo discharged from the STAR GRAN; the condition of the cargo discharged from the STAR GRAN; mitigation efforts for th rubber cargo, including sorting of the rubber and salvage sale of the cargo; the quantification of Alcan's damage and other matters within his knowledge.

27.    Maureen Chadwick and/or other Representative of National Marine Insurance Agency
       Limited and/or Royal & Sunalliance Insurance Australia Limited.
       National Marine Insurance Agency Limited
       Level 18, 60 Margaret St.
       Sydney 2000
       NSW Australia

Fact witness who may testify regarding the claim for damage to Boral's plasterboard cargo; damages sustained by Boral; Boral's mitigation of its damages; and payment of the claim by underwriters.

29.    J. Boehner and/or other representative
       Tom Adams & Assoc.

Fact witness who may testify regarding the condition of the rubber and plasterboard cargos during discharged from the STAR GRAN; the rejection of the plasterboard cargo and other matters within his knowledge.

30.    R.P. Dowey, Mike Bradley, Emelio White, and/or other representative of SSA Stevedores
       Stevedores Services of America (SSA Stevedores)
       Pensacola, Florida

Fact witness who may testify regarding the condition of cargo discharged from the M/V STAR GRAN; condition of the STAR GRAN at the time of discharge; condition of the cargo at the time of discharge; stacking and segregation of cargo discharged, and other matters within his knowledge.

31.    Any witness necessary to authenticate any document;

32.    Any witness listed by any other party.

**(b.)    M/V STAR GRAN, Star Shipping A/S, Gran, Inc., and Greig Shipping A/S.**

**Will Call Witnesses:**

a.    Dr. John Atherton

b.    Frans Coppers

**May Call Witnesses:**

1.    Captain Arnel P. Dela Cruz

2.    Ronick R. Santome

3.    Neil Lazaro E. Busarang

4.    Geroncio B. Lopez

5.    Eduardo Mesias

6.    Justito Paz Balicanta

7.    Dante B. Turingan

8.    The officers of the M/V STAR GRAN

9.    The crew of the M/V STAR GRAN

10.    A representative of Star Shipping A.S.

11.    A representative of Grieg Shipping A.S.

12.    A representative of Gran, Inc.

13.     A representative of A/S Billabong

14.     Kjell Veka

15.     Captain Moldestad

16.     A representative of loading and discharging stevedores

17.     A representative of P.T. Andhika Lines

18.     William Crawford

19.     Trond K. Semmen

20.     Arne Birkeland

21.     Any witness listed or called by any other party.

## 14. JURY OR NON JURY TRIAL

This case is non-jury.

## 15. BIFURCATION

The issue of liability will not be tried separately from that of quantum.

## 16. DISPOSITION OF THIS CASE

See Section 5 (Pending Motions) for a description of the Appeal of the Judgment relating to

Andnhika.

## 17. TRIAL

Trial shall commence on January 13, 2003, at 9:00 a.m.  It is estimated that trial will take

three days.

## 18.  **PRE-TRIAL ORDER**

This pre-trial order has been formulated after a conference at which counsel for the respective parties have appeared in person.  Reasonable opportunity has been afforded counsel for corrections, or additions, prior to signing.  Hereafter, this order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of the Court to prevent manifest injustice.

## 19.  **POSSIBILITY OF SETTLEMENT**

Counsel have participated in a settlement conference with Magistrate Wilkinson and are continuing to explore the possibility of settlement.

Respectfully submitted,

John F. Fay, Jr., T.A. ( # 1870)
William K. Terrill II (#5897)
DEUTSCH, KERRIGAN & STILES, L.L.P.
755 Magazine Street
New Orleans, LA  70130-3672
Telephone:    (504) 581-5141
Facsimile:    (504) 566-1201
**Attorneys for Alcan Rubber &
Chemical, Inc. and Royal & Sunalliance
Insurance Australia Limited**

Robert J. Barbier, T.A. (#2741)
Stephen E. Mattesky (#9046)
TERRIBERRY, CARROLL & YANCEY, L.L.P.
3100 Energy Centre

33

1100 Poydras Street
New Orleans, Louisiana 70163
Telephone: (504) 523-6451
**Attorneys for M/V STAR GRAN, Star Shipping
A/S, Gran, Inc. and Greig Shipping A/S**

**UNITED STATES DISTRICT JUDGE**

G \VICTORIA\Jff\Star Gran\PLEADING\PRETRIAL wpd

34